DENNIS J. HERRERA, State Bar #139669
City Attorney
JOANNE HOEPER, State Bar #114961
Chief Trial Deputy
RONALD P. FLYNN, State Bar #184186
Deputy City Attorney
Fox Plaza
1390 Market Street, 6th Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3901
Facsimile:    (415) 554-3837

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO,
KEVIN WORRELL, DAMIEN FAHEY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| ADRIENNE MACBETH, | Case No. C07-3304 MEJ |
|---|---|
| Plaintiff, | **DEFENDANTS REPLY IN SUPPORT OF MOTION TO DISMISS SECOND THROUGH NINTH CAUSES OF ACTION** |
| vs. | |
| CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; KEVIN WORRELL, individually and in his official capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO, DAMIEN FAHEY, individually and in his official capacity as a police officer for the CITY AND COUNTY OF SAN FRANCISCO; and DOES 1-50, individually and in their official capacities. | Hearing Date:    October 11, 2007<br>Hearing Judge:  Mag. Maria-Elena James<br>Time:    10:00 a.m.<br>Place:    Courtroom B, 15th Floor<br><br>Date Action Filed:    June 22, 2007<br>Trial Date:    None Set |
| Defendants. | |

**INTRODUCTION**

Relying on cases that have been overruled and legal theories that have been soundly rejected, plaintiff argues that she may proceed on her second cause of action for alleged violation of her substantive due process rights under the Fourteenth Amendment. Binding Supreme Court and Ninth Circuit authority holds otherwise. And she walks away from her third through ninth causes of action. So defendants respectfully request that the Court grant their motion to dismiss the second through ninth causes of action in its entirety.

**I.    CAUSES OF ACTION THREE THROUGH NINE SHOULD BE DISMISSED WITH PREJUDICE**

Plaintiff's opposition includes a non-opposition to dismissal of the third through ninth causes of action. (Opp. at 4; *see also* Docket #17 (Certification of Non-Opposition).) Defendants request that the Court grant the motion to dismiss the third through ninth causes of action with prejudice.

**II.   PLAINTIFF'S SECOND CAUSE OF ACTION FOR SUBSTANTIVE DUE PROCESS MUST BE DISMISSED**

Plaintiff makes two basic arguments in support of her second cause of action for violation of rights guaranteed to her under the substantive due process clause of the Fourteenth Amendment. Binding case authority forecloses each.

**A.    Allegations of Excessive Force in the Context of an Arrest are Governed by the Fourth Amendment, Not the Substantive Due Process Clause of the Fourteenth Amendment**

Plaintiff misreads *Sacramento v. Lewis*, 523 U.S. 833 (1998) as allowing a Fourteenth Amendment substantive due process claim *and* a Fourth Amendment excessive force claim where an officer is accused of using excessive force independent of his or efforts to "seize" a suspect. (Opp. at 1-2.) That is not what *Sacramento v. Lewis* held. There, the parents of a person killed in a high speed police chase brought a § 1983 claim—the Supreme Court found that the claim must be analyzed under the Fourteenth Amendment's substantive due process clause *because* no search or seizure had occurred, so the Fourth Amendment could not apply. 523 U.S. at 843. In doing so, the Supreme Court rejected a previously widely-used "four-part 'substantive due process' test" set out in *Johnson v. Glick*, 481 F.2d 1028 (2nd Cir. 1973) that lower courts had applied to *all* claims of excessive force claims. *Id.* 393. Instead, the Court affirmed the rule announced in *Graham v.*

1  *Connor* that where an explicit Amendment provides an explicit textual source of constitutional
2  protection exists, *that* Amendment governs the claim *and not* the more generalized substantive due
3  process standard.  543 U.S. at 842, *citing Graham v. Connor*, 490 U.S. 386 (1989).

4      *Graham v. Connor* is dispositive of the issue here.  There, a diabetic having an insulin
5  reaction ran into a store looking for sugar, and then ran immediately out of the store when the line
6  appeared to long:  officers who saw him run in and out of the store detained him to investigate what
7  they thought was suspicious behavior.  490 U.S. at 388-389.  The officer rolled the suspect over on
8  the sidewalk and handcuffed him despite his pleas for sugar.  *Id.* at 389.  At that point he was
9  "seized."  Then they carried him to the police car and placed him face down on the hood, where he
10 lost and regained consciousness.  *Id.*  While still handcuffed and face down on the hood, the suspect
11 asked the officers to check his wallet for a diabetic decal—they told him to "shut up" and shoved his
12 face down against the hood of the car.  *Id.*  Four officers then grabbed him and threw him headfirst
13 into a police car.  *Id.*  The officers then received a report from the store that there was nothing
14 wrong, and released him.  *Id.*  The Supreme Court took the opportunity to clarify the standards that
15 govern excessive force allegations, and specifically held that the Fourth Amendment, not the more
16 generalized Fourteenth Amendment governed:

> Where as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . .

19 *Id.* at 394.

20     The facts and law of *Graham* do not allow for plaintiff's novel argument.  Plaintiff argues
21 that the Fourth Amendment governs allegations of excessive force used in the seizure itself, and then
22 the Fourteenth Amendment governs the allegation of excessive force after a seizure.  (Opp. at 2
23 (characterizing post-seizure force by officers as "independent of their goal of performing a
24 seizure").)  But in *Graham*, the officers were alleged to have handcuffed the suspect, and then to
25 have slammed him into the hood of the car after he asked questions.  So in the very case that
26 definitively established that the Fourth Amendment governs excessive force claims in the context of
27 an arrest, there were also allegations that officers used force after the seizure.  *Graham* simply does
28 not allow plaintiff's "independent of the goal of performing a seizure" distinction.  Because plaintiff's

claim arises in the context of an arrest, the Fourth Amendment, not the Fourteenth Amendment substantive due process standard applies.

Plaintiff's case authority also fails to save her claim. She relies on two decisions that predate *Graham* and have both been overruled (plaintiff indicates that each was "overruled on other grounds"). (*See* Opp. at 2, *citing Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 1987), *Rutherford v. City of Berkeley*, 780 F.2d 1444 (9th Cir. 1989)). Both of those cases not only predate *Graham*, but also cite to and rely on the test set out in *Johnson v. Glick*, the test that was rejected by the Supreme Court in *Graham*. *See Smith v. Fontana*, 818 F.2d at 1417; *Rutherford v. City of Berkeley*, 790 F.2d at 1446. The Supreme Court has squarely answered this question; plaintiff's claim must proceed as a Fourth Amendment claim, not a substantive due process Fourteenth Amendment claim.

### B. A Constitutional Violation Must Occur Before A Municipal Entity May Be Found Liable

Plaintiff also argues that the cause of action may proceed against defendant City and County of San Francisco because San Francisco is directly liable for violating plaintiff's constitutional rights even if no individual officer violated her constitutional rights. (Opp. at 3.) Plaintiff's is wrong on the law.

If it is found that the individual officers did not deprive plaintiff of her constitutional rights, such finding would be dispositive of plaintiffs' municipal liability claim. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either *Monell* [ ] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); *see also Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) ("Exoneration of [the individual officer] of the charge of excessive force precludes municipal liability for the alleged unconstitutional use of such force."); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) (where individual officers were entitled to judgment on ground they did not use excessive force, municipality was entitled to judgment on claim municipality failed to adequately train officers).

In the face of this clear authority, plaintiff relies on two cases for the proposition that she may prevail on a claim against San Francisco even if the officers are exonerated. Plaintiff cites *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992) for the proposition that a government entity can be held liable for putting poorly trained officers on the street even where the individual officers are exonerated. (Opp. at 3.) In *Hopkins*, the Ninth Circuit reversed summary judgment in favor of officers, and accordingly reversed summary judgment in favor of the municipality. 958 F.2d at 888 ("Because [plaintiff] may be held liable under our disposition, so may the other defendants.") But the court went on to note that even if the officers were to be individually exonerated, the government may still be held liable for improper training. *Id.* Given the plain rule of law set out in *City of Los Angeles v. Heller*, the Ninth Circuit has subsequently made clear that *Hopkins* does create municipal liability absent a constitutional violation, but instead *Hopkins* should be limited in its holding to such instances where plaintiff proves constitutional violation, but an officer is exonerated due to qualified immunity. *See Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) (distinguishing *Hopkins* and holding that where trier of fact found individual officers did not deprive plaintiff of Fourth Amendment rights, trial court "correctly entered judgment" for municipality on municipal liability claim); *see also Scott v. Henrich*, 39 F.3d at 916 (9th Cir. 1994) (implicitly limiting *Hopkins* to situations where a possibility of a constitutional violation remains; "unlike the situation in *Hopkins* [], there was no violation of the decedent's constitutional rights, and thus no basis for finding the officers inadequately trained").[1]

To the extent that plaintiff purports that *Hopkins* somehow overturns the Supreme Court's holding in *City of Los Angeles v. Heller*, this Court has already squarely rejected that notion:

> Relying on *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992), plaintiffs argue that even if an individual officer is found not to have committed a Fourth Amendment violation, a municipality nevertheless can be held liable on an improper training and/or supervision theory. The language in *Hopkins* on which plaintiff's rely is dicta, however, as the individual officer therein was

---

[1] Notably, plaintiff states that *Hopkins* has been "overruled on other grounds in *Martinez v. County of Los Angeles*, 47 Cal App.4th 334 (1996)." (Opp. at 3.) But *Martinez* holds that "since we hold there was no constitutional violation by [the individual deputies], the county defendants cannot be liable for having failed to adequately train or supervise their deputies. *Martinez*, 74 Cal.App.4th at 348-349. So, *Martinez* squarely rejects the exact position for which plaintiff cites *Hopkins*.

Reply in Support of Motion to Dismiss                     4                    n:\lit\li2007\080052\00435716.doc
MacBeth v. CCSF Case No. C07-3304 MEJ

> not exonerated. Moreover, in light of the Supreme Court's decision in *Heller* as well as the Ninth Circuit cases, cited infra, expressly holding to the contrary, *Hopkins* should not be read as standing for the proposition that a municipality may be held liable in the absence of a constitutional violation by the individual defendant.

*Wilkins v. City of Oakland*, 2006 WL 305972, *1 n.2 (N.D. Cal. 2006). Simply put, plaintiff's *Monell* claim must be predicated on a constitutional violation—in this case the alleged violation is a Fourth Amendment one, not a Fourteenth Amendment one.

Finally, plaintiff's reliance on *Fagan v. City of Vineland*, 22 F.3d 1283, 1291-92 (3d Cir. 1994) is misplaced. (Opp. at 3.) She cites that Third Circuit decision for the proposition that a municipality can "be held liable under § 1983 and the Fourteenth Amendment for failure to train its police officers with respect to high-speed automobile chases, even if no individual officer violated the Constitution. (*Id.*) As to which Amendment to analyze a high-speed police chase, plaintiff is correct that unlike a case involving a seizure, police chases are analyzed under the Fourteenth Amendment. *Sacramento v. Lewis*, 523 U.S. at 843.

But defendants suspect that plaintiff's purpose in citing *Fagan* is to bolster her position that a municipal liability claim may succeed absent a constitutional violation. On that point, as discussed above, the Supreme Court's decision in *City of Los Angeles v. Heller*–and a string of Ninth Circuit decisions—preclude reliance on *Fagan*. To the extent that plaintiff invites the Court to reject binding authority and adopt the reasoning in *Fagan*, it should not do so. Not only has plaintiff provided no authority for such a step, but other courts have firmly rejected *Fagan* on this very issue. *See Evans v. Avery*, 100 F.3d 1033, 1039-40 (1st Cir. 1996) (declining to adopt the reasoning in *Fagan* because it "improperly applied the Supreme Court's teachings" in *City of Los Angeles v. Heller*); *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994) (rejecting the reasoning in *Fagan*, instead stating "we choose to follow the clear holding of *Heller* that 'if a person has suffered no constitutional injury at the hands of individual police officers, the fact that the departmental regulations may have authorized the use of constitutionally excessive force is quite besides the point'"). Plaintiff's theory has no support in the law.

## CONCLUSION

Plaintiff has stated a claim for an alleged violation of her Fourth Amendment right to be free from unreasonable seizure. Nothing more. There is no need to make this case more complicated than it is. In addition to the non-opposed dismissal of causes of action three through nine, the second cause of action should be dismissed with prejudice.

Dated: September 27, 2007

                                    DENNIS J. HERRERA
                                    City Attorney
                                    JOANNE HOEPER
                                    Chief Trial Deputy
                                    RONALD P. FLYNN
                                    Deputy City Attorney

                                    -/s/-   *Ronald P. Flynn*
                        By:_____
                                    RONALD P. FLYNN

                                    Attorneys for Defendants
                                    CITY AND COUNTY OF SAN FRANCISCO
                                    KEVIN WORRELL, and DAMIEN FAHEY